McCONE *& a. v.* COURSER *& a.*

Two distinct equities of redemption in different parcels of land, under mortgages to different persons, cannot be sold together on an execution against the mortgagor.

One who takes a deed of land with knowledge of an outstanding equitable right or title in a third person, takes it subject to such outstanding right.

BILL IN EQUITY, brought by the administrator, widow, and children of Manuel P. Silva and by Barney McCone against William M. Courser and John A. Smith, praying (1) that Smith be required to join in a deed given May 17, 1867, by his wife Mary E. Smith to John L. Laskey; (2) that Courser be enjoined from setting up title to the premises under a deed from Smith to him dated January 5, 1887, and that the deed be declared void; (3) that Courser be required to surrender the premises to the plaintiffs, and to account for and pay damages for his occupation of them. Smith makes no answer, and the bill is taken *pro confesso* as to him. Courser answers, insisting upon the validity of Smith's deed to him, and setting up a right to the possession of the premises as the tenant and agent of Harry L. Jones. Facts found by a referee.

December 10, 1864, John A., in consideration of marriage, conveyed the premises known as the Burrows place to Mary E., whom he married a day or two afterwards. Living children were born to them. Mary E. died in 1883. May 17, 1867, by deed of warranty, in which her husband did not join, Mary E. conveyed the premises to John L. Laskey, who paid her the full value of the unincumbered fee. John A. made the bargain with Laskey. He, his wife, and Laskey understood that the wife's deed without the husband's joining would convey the entire interest in the place free from any present or future claim of the husband. They were so advised by the scrivener who drew the deed, and it was by reason of this advice that John A. did not join in the deed. By mesne conveyances the premises came to Ruth Laskey, who, January 13, 1876, conveyed the same with warranty to Barney McCone, taking his note for $2,000, secured by a mortgage of the place for a part of the purchase-money. January 21, 1886, McCone quit-claimed to Silva, and the administrator of Ruth Laskey assigned to Silva the McCone note and mortgage. On the same day, and before the assignment, McCone, in consideration of $600 allowed to him and endorsed upon his note, by an instrument under seal released the heirs of Ruth Laskey from liability on the covenants in her deed to him. Silva went immediately into possession, and made McCone his tenant.

December 24, 1885, on an execution issued upon a judgment

obtained against McCone in September, 1885, by one Chadwick, all
the equity of redemption which McCone had October 10, 1884, in
the Burrows place, and also in a distinct tract of land on Third
street in Dover, was sold to Chadwick.  The Burrows place was
then subject to the Laskey mortgage.  The tract on Third street
was subject to two mortgages to other parties.  No one mortgage
covered both tracts.  McCone's right of redeeming both places
was sold by the sheriff at a gross sum.  Chadwick subsequently
conveyed his interest to Harry L. Jones, and January 5, 1887,
Dodge, Jones's attorney and agent, called on John A. Smith, told
him that if he was legally married to Mary E. and had children
by her he was entitled to a life estate in the premises, and offered
him $35 for his quit-claim.  Smith accepted the offer, received the
money, and executed and delivered to Courser the deed set forth
in the bill.  The circumstances were such as to put Dodge, as
Jones's agent, upon inquiry as to whether John L. Laskey, John
A. and Mary E. Smith, at the time when the deed of Mary E. was
executed, believed that Laskey was getting a perfect and unincum-
bered title; and if he had made reasonable inquiry he would have
found that all the parties entertained such belief.  Courser took
forcible possession.  If he is held liable in this suit for damages or
mesne profits, a further hearing is to be had to determine the
amount of his liability.

Courser offers to show that McCone, at the time of the sale of
the equity on Chadwick's execution, retained his domicil and voted
in ward four, where the Burrows place was situated, but lived, and
for eight or nine months had lived, with his family on the Third
street place; that Chadwick was advised by his counsel that Mc-
Cone could claim a homestead in either place at his election; that
there was little or no margin in the Third street place over and
above the mortgages and homestead; that there was barely suffi-
cient in the Burrows place over and above the mortgage to pay
the claim; that in bidding on the equities separately the creditor
would not be safe, because McCone would have his option to take
his homestead in either place; that the equity in neither one of
the two places would satisfy the debt if the homestead were taken
out of that place; and that the sale was postponed two or three
times in order to see if there was no other practicable way to make
a beneficial sale of the equity.

*A. G. Whittemore* and *J. S. H. Frink*, for the plaintiffs.

*Dodge & Caverly* and *W. L. Foster*, for the defendants.

CARPENTER, J.   The sale of McCone's two equities as one was
invalid.  Gen. Laws, c. 238, ss. 5 and 6;  *Fletcher* v. *Stone*, 3 Pick.
250;  *Webster* v. *Foster*, 15 Gray 31, 33.  It would be none the less
invalid if the facts which the defendants offered to prove were

established. Whatever legal or practical difficulty in making the levy existed by reason of the debtor's right, if he had it, to elect in which place he would take a homestead, or because of an uncertainty to which place his homestead right attached, it did not authorize a sale that would compel him to redeem both places or neither of them. Such a difficulty must be met in a way that will not destroy the debtor's legal right to redeem one and not the other.

Without inquiry, it is assumed, in accordance with the claim of both parties, that John A. was seized of a life estate in the premises as tenant by the curtesy. He was a party to the bargain by which Laskey was to have the unincumbered fee. His failure to join in the deed was due to ignorance that he had any interest in the premises. As against him the plaintiffs claiming under Laskey are entitled to a conveyance which will have the effect that all the parties to the transaction intended. The objection, that the bill, so far as it relates to Smith, calls for the specific performance of an oral contract for the conveyance of land, if tenable, is not taken. *Newton* v. *Swazey,* 8 N. H. 10.

Courser, when he bought Smith's title, had through Dodge, his agent in making the purchase, notice or the equivalent of notice of the plaintiffs' equitable right to a conveyance of that title, and in respect to the relief sought stands in Smith's shoes. The plaintiffs' right and the defendants' liability are not affected by McCone's release of Laskey's heirs. If Laskey had conveyed without covenants, the plaintiffs would be none the less entitled to the entire estate.

Damages for the occupation of the premises by Courser, or mesne profits, are incident to the general relief sought, and may be assessed in this proceeding. *Bassett* v. *Company,* 43 N. H. 252; *Dennett* v. *Dennett,* 43 N. H. 503; *Richards* v. *Todd,* 127 Mass. 167.

*Decree for the plaintiffs.*

CLARK, J., did not sit: the others concurred.